CLERKS OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
February 03, 2026
LAURA A. AUSTIN, CLERK
BY: s/ K. SAVILLE
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL ANTONIO DAVID Jr. | Case No.<br><br>7:26mj22 |

**AFFIDAVIT IN SUPPORT OF COMPLAINT**

I, Stephen D. Foster, being first duly sworn, hereby depose and state the following:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of a complaint and arrest warrant under Rules 3, 4, and 4.1 of the Federal Rules of Criminal Procedure.

2. I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18 of the United States Code Section 2510(7), and empowered by law to conduct investigations of, and to make arrests for, offenses in violation of Title 18 and Title 21 of the United States Code.

3. I am a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives, United States Department of Justice, and have been since approximately November 2023. I am employed by the Roanoke Police Department as a detective and have been a sworn law enforcement officer within the Commonwealth of Virginia for approximately fifteen years. I have received training in various aspects of law enforcement, including but not limited to criminal investigations involving firearms.

4. As a result of my traiBning and experience as an ATF Task Force Officer, I am familiar with federal criminal laws and know that it is a violation of Title 18, United States Code, Section 922(g)(1) for an individual to possess a firearm after having previously

been convicted of a felony offense, that is a crime punishable by imprisonment for a term exceeding one year.

5. The information contained in this affidavit is based on my personal knowledge of, and involvement in, this investigation as well as other facts and information provided to me by other law enforcement officers involved in this investigation. I am thoroughly familiar with the information contained in this affidavit through personal exposure to the records and reports, and through discussions with other law enforcement personnel.

6. The facts comprising the basis for this affidavit are true and correct to the best of my knowledge. Because this affidavit is being submitted for the limited purpose of supporting a federal criminal complaint and arrest warrant for the defendant, this affidavit does not purport to set forth all the facts and circumstances known to me about this matter. Instead, this affidavit sets forth only those facts which I believe are necessary to support a finding of probable cause to believe that Michael Antonio DAVID Jr. ("DAVID") possessed a firearm after having previously been convicted of a felony, in violation of Title 18, United States Code, Section 922(g)(1).

## PROBABLE CAUSE[1]

7. On or about February 7, 2025, detectives with the Roanoke Police Department (RPD) Gang Intel Unit (GIU) conducted surveillance within the 3400 block of Bennett Drive Northwest (NW) and the 3500 block of Dona Drive NW. These two locations are within the Ashton Heights Apartment complex and are known to law enforcement as having a high concentration of narcotic-related crimes, violent crimes, and criminal gang

[1] All of the events discussed herein occurred within the Western District of Virginia.

activity.

8. At approximately 2:00 p.m., Detective N. Houck observed DAVID drive a blue Nissan four-door-sedan onto the parking lot and park in front of the apartment building at 3406 Bennett Drive NW. DAVID, a previously convicted felon who was then on federal supervised release and aware of his status as a convicted felon, remained in the driver's seat while an unknown black female exited the front passenger seat and walked into the apartment building. Law enforcement later learned that this vehicle had been rented through Enterprise by a female and was due to be returned later that afternoon.

9. Shortly after the unknown female entered building 3406, Det. Houck observed a young black juvenile male, J.T., exit the building of 3406 Bennett Drive NW and enter the front passenger seat of DAVID's blue Nissan. DAVID and J.T. remained in the vehicle for an extended period before driving to 3533 Dona Drive, which is still located within the Ashton Heights Complex. After they parked, J.T. exited the vehicle, returning a short time later, while DAVID remained in the driver's seat. The two then left the apartment complex.

10. DAVID then drove the Nissan to Melrose Avenue NW and turned east. Multiple law enforcement officers joined Det. Houck in providing surveillance of DAVID's movements. Detectives observed DAVID pull into a driveway within the 2100 block of Melrose Avenue NW and park. No one exited or approached the vehicle. A short time later, DAVID resumed driving towards Essex Avenue NW. Due to DAVID driving at a slower speed, law enforcement lost surveillance of the vehicle for approximately five minutes. When investigators re-established surveillance as it was traveling on Moorman Avenue NW, DAVID was still driving the blue Nissan and J.T. was still seated in the front passenger seat.

11. DAVID then circuitously drove through several streets in Northwest Roanoke until he pulled into the parking lot of a garage located at 724 11th Street NW. Based upon my training and experience, DAVID'S path of travel and parking at this seemingly random location are consistent with tactics used by those engaged in criminal activity to determine whether they are being followed. Once parked, DAVID exited the vehicle while talking on a cellphone and holding what appeared to be new windshield wiper blades. J.T. also exited the vehicle and stood outside by the passenger door while DAVID briefly walked around the area of the business. Det. Robert Newman observed that J.T. appeared to be carrying something heavy in his hoodie pocket, and although he was unable to confirm what that object was, based upon the aforementioned tactics, Det. Newman noted in his report that he believed J.T. was holding a firearm in that pocket.

12. The two men then reentered the vehicle, with DAVID again driving and J.T. seated in the front passenger seat. The vehicle then traveled south on 11th Street NW and turned west onto Melrose Avenue NW. Detectives confirmed that DAVID did not have a valid driver's license—his license was revoked—and coordinated with uniform officers to perform a traffic stop on the blue Nissan.

13. Prior to those officers initiating the stop (at approximately 4:14 p.m.), DAVID pulled into the driveway of a residence located at 2416 Orange Avenue NW. DAVID and J.T. exited the vehicle and walked towards the east side of the residence. The uniformed officers then pulled in behind the blue Nissan with their emergency lights activated. After exiting their patrol vehicle, the officers told DAVID and J.T. to walk towards them. DAVID and J.T. complied.

14. Officer Hill advised DAVID that he was not supposed to be driving because

his license was revoked. DAVID denied driving the vehicle and challenged officers on whether they even saw him in the vehicle. He also claimed that he did not know who owned or rented the vehicle. During the traffic stop, detectives requested a K-9 unit to the scene. As Officer Hill was finishing the traffic summons and calling Enterprise rental to determine who had leased the vehicle and how Enterprise wanted them to do with the vehicle, Officer Cobb and "Vader," his K-9 partner who has been trained and certified to detect the presence of odor for cocaine, heroin, and methamphetamine, arrived and conducted a free-air sniff on the exterior of the vehicle. The dog then positively alerted to the presence of a narcotic odor on the passenger side of the vehicle.

15. Subsequent to the K-9 alert, uniformed officers searched the vehicle. Sgt. Travis Barber discovered a cell phone, that J.T. indicated belonged to DAVID, between the driver's seat and center console. Inside the center console, Barber discovered two firearms along with a wallet that contained DAVID's identification card. The firearms were: an Armscor (Imported by Rock Island Armory), Model M206, .38 special, revolver and a Taurus, Model G2C, .9mm, semi-automatic, pistol. The revolver was loaded with six (6) cartridges, and the pistol was loaded with fourteen (14) cartridges in the magazine with one cartridge in the chamber. In the trunk of the vehicle, law enforcement observed a black trash bag that contained numerous items of male clothing. Law enforcement arrested both DAVID and J.T. and charged both with unlawfully possessing the weapons found in vehicle.[2]

16. During a subsequent review of DAVID's phone pursuant to a search warrant,

[2] J.T. had a prior adjudication (involving a firearm) that, along with his age, would have prohibited him from lawfully possessing a firearm. In September 2025, J.T. was also involved in another traffic stop where multiple weapons were located on the front dashboard while J.T. was in the front passenger seat.

law enforcement located several photographs of firearms in the phone. Photographs dating back to June 2024 show DAVID holding two pistols and photographs from subsequent dates depict several different firearms.[3] Additionally, in a text conversation days before this incident, it appeared DAVID purchased a .22 caliber pistol for $200.[4]

17. Law enforcement swabbed the pistol grips of both firearms in hopes of developing DNA profile from those swabs that was suitable for comparison. They also obtained buccal swabs from both DAVID and J.T. to compare to any profiles that were developed through a DNA analysis. These four swabs were then sent to DNA Labs International for such an analysis. As reported in a Certificate of Analysis dated July 18, 2025, a forensic DNA analyst developed a DNA profile from the swabs taken from both firearms. The DNA profile obtained from the revolver indicated "a mixture of at least two individuals with at least one male contributor" and the DNA profile obtained from the pistol indicated "a mixture of at least four individuals with at least one male contributor." However, the analyst opined that due to the complex nature of each mixed DNA profile, they were inconclusive for comparison purposes. Therefore, the samples obtained from DAVID and J.T. were unable to be compared to each of the profiles the analyst developed.

18. In addition to this DNA testing, law enforcement also test-fired both weapons and found them to be operational. ATF Special Agent Andrew Burton, who is qualified to determine whether a firearm has moved from one state or country to another during its existence, also examined both firearms found in the Nissan. Burton determined that each weapon was in fact a firearm as defined in the United States Code and that each firearm had

---

[3] None of these later photographs depict DAVID, nor do any of the firearm photographs on his phone appear to be of the firearms recovered during this incident.
[4] This .22 caliber pistol was also not one of the firearms recovered during this incident.

moved in and/or affected interstate commerce because it was manufactured outside the Commonwealth of Virginia.

**CONCLUSION**

19. Based on the foregoing, your affiant asserts that there is probable cause to believe that on February 7, 2025, MICHAEL ANTONIO DAVID, Jr., knowing that he had been previously convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess a firearm in violation of Title 18, United States Code, Section 922(g)(1). Accordingly, I respectfully request that a federal arrest warrant be issued for DAVID.

STEPHEN FOSTER (Affiliate)
Digitally signed by STEPHEN FOSTER (Affiliate)
Date: 2026.02.03 13:26:06 -05'00'

Stephen Foster, Task Force Officer
Bureau of Alcohol, Tobacco, Firearms & Explosives

Sworn before me in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone this 3rd day of February 2026.

THE HON. C. KAILANI MEMMER
UNITED STATES MAGISTRATE JUDGE