**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. 7:26-CR-00006** |
| | ) | |
| **MICHAEL ANTONIO DAVID, JR.** | ) | |
| | ) | |

## DEFENDANT'S MOTION TO COMPEL DISCOVERY

The defendant, Michael David, Jr., by and through the undersigned counsel, hereby moves for an order pursuant to Federal Rules of Criminal Procedure (hereinafter Criminal Rules) 16(a)(1)(E), 6(e), 26.2, and 32.1(b)(2)(B) compelling disclosure by the government of any previously undisclosed matters. In support of this motion, Mr. David states:

## FACTUAL BACKGROUND

1. On March 23, 2026, Mr. David formally requested discovery.[1]
2. Included in the discovery request was a specific request for *Jencks* material.[2]
3. Also included in the discovery request was a specific request for *Brady* and *Giglio* material.[3]
4. On April 22, 2026, counsel for Mr. David, Heidi Bohn, Esq., called counsel for the government, John Beamer, Esq., to find out how Detective Newman contacted the K-9 Officer to coordinate and request the presence of the K-9, and whether status updates on the K-9's arrival were communicated by the same method. Later that day, Mr. Beamer indicated that he consulted with Detective Newman and K-9 Officer Cobb, and

[1] See attached Defense Exhibit A
[2] See attached Defense Exhibit A, subsection VII
[3] See attached Defense Exhibit A, subsection VIII

that neither officer could remember how those communications occurred, and that no records or logs of any such communications existed.

5. On May 7, 2026, Mr. David formally requested additional detailed discovery via letter provided to the government. In pertinent part, Mr. David requested[4]:

> 11. Which, if any, communication apps were used by officers involved in the surveillance, traffic stop, and K9 search involving Michael David, Jr. on 2/07/2025?
> 12. What was the content of any communications made on communication apps used by officers involved in the surveillance, traffic stop, and K9 search involving Michael David, Jr. on 2/07/2025?
> 13. Did officers use their personal cell phones to communicate regarding the surveillance, traffic stop, and K9 search involving Michael David, Jr. on 2/07/2025? If officers used their duty cell phones, which officers did so?
> 14. If officers used their duty cell phones, what cell phone carrier(s) did each officer have on 2/07/2025?

6. Weeks later, on May 27, 2026, the government responded to the request for supplemental discovery[5] and stated, in pertinent part:

> 11. Whattsapp [sic] was used by detectives.
> 12. The content of this information is reflected in their written reports which have been provided in discovery.
> 13 and 14. Officers utilize cell phones routinely during the course of their duties. What phone they used, the carrier, and the phone number are not discoverable under Rule 16, the Jencks Act, or the Due Process Clause. The Government has disclosed the written reports, body worn camera, and dash camera which contain the contents of officer communications on 2/7/25. The Government has also made efforts to locate any other written or recorded statements of the officers and has not located anything more than what has previously been provided in discovery.

7. The government, by its counsel, represented to defense counsel that no other documentation of the communications of investigating officers was available because their communications were limited to a group call through WhatsApp, and no call logs of any such call were available either.

---

[4] See attached Defense Exhibit B
[5] See attached Defense Exhibit C

8. Review of the body-worn camera (BWC) footage shows law enforcement sending, receiving, and viewing text messages used to communicate during the course of the investigation. Upon further inspection while preparing for a hearing on Mr. David's motion to suppress, staff members noticed points in the BWC footage where text messages from what appear to be officers' personal cell phones are legible. The messages, while difficult to decipher due to the quality of still images obtained from the BWC, clearly pertain to the investigation and stop of Mr. David. Counsel was also able to determine that approximately eleven (11) individuals were involved in group messages visible on the BWC.

9. After noticing the messages and the relevance of their content, on June 3, 2026, counsel promptly contacted counsel for the government, John Beamer, Esq., and informed him of this discovery and the discrepancy between the government's discovery responses and officers' visible actions on camera.




*Screenshot from body-worn camera video showing approximately 11 participants*

10. Later in the afternoon on the same day, the government disclosed screenshots, reportedly created by the involved officers, showing some of the exchanges visible on the BWC, some with timestamps.

11. In addition to the content of the messages, some of the messages are adorned with "reactions" or "emojis," indicating that participants in the group chat were affirmatively responding to the messages with symbols. The identities of the individuals adding "reactions" were not visible in the screenshots disclosed by the government.

12. The government also disclosed a PDF of an email from its case agent, Stephen Foster, that listed the names of seven (7) individuals involved in the group message.
13. The government, as of 6:00 PM on June 3, 2026, has made a total of two additional disclosures showing text messages among officers.
14. At an emergency status conference on June 3, 2026, the government provided that at least some of the officers had caused their phones to be set to automatically delete text messages after more than a year had elapsed. The government further indicated that all of the messages provided were self-produced by the officers involved in the group message.

## ARGUMENT

Under Criminal Rule 16, papers, documents, and data are producible upon a defendant's request as long as they are in the government's possession, custody, or control and are material to preparing the defense. The Jencks Act and this Court's discovery protective order require disclosure of certain communications. The text message exchanges among officers discussing their investigation of Mr. David before, during, and after he was stopped are clearly discoverable. The fact that officers elected to conduct official business on their personal phones does not shield these communications from disclosure. Officers' apparent deception toward the United States Attorney's Office and defiance of the Court's order to produce all communications by withholding these messages constitute clear misconduct and discovery violations.

It is well settled that the government is obligated to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment.[6] Evidence may be "favorable" in the required sense not only when it tends substantively to negate guilt but also when

[6] *United States v. Agurs*, 427 U.S. 97 (1976); *Brady v. Maryland*, 373 U.S. 83, 87, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963).

it tends to impeach the credibility of a key witness for the prosecution.[7] This obligation extends to information within the prosecutor's possession as well as within the possession of the agencies investigating the alleged criminal conduct in the case.[8] This obligation derives from the right to due process, a fair trial, and to adequately confront witnesses.[9] The prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of "reasonable probability" is reached.[10] This, in turn, means that the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.[11]

Contrary to the government's response to Mr. David's request for these exact communications, the verbatim messages exchanged by officers during the course of this investigation are not adequately memorialized in the written reports provided and in fact are not referenced in those reports. The screenshots of messages disclosed (thus far) show at least some contrasting information and information related to officers' bias against Mr. David. When, as in this case, an accused cannot possibly know, but may only suspect, that particular information exists which meets the requirement of materiality, he is not required, in order to invoke the right, to make a particular showing of the exact information sought and how it is material and favorable. Instead, he need only at that stage "at least make some plausible showing" that it does exist and how it would be "both material and favorable to his defense."[12]

---

[7] *Giglio v. United States,* 405 U.S. 150, 154, 31 L. Ed. 2d 104, 92 S. Ct. 763 (1972); see *Jean v. Rice*, 945 F.2d 82, 87 (4th Cir. 1991).
[8] *Monroe v. Angelone*, 323 F.3d 286, 299 (4th Cir. 2003) (quoting *Kyles v. Whitley*, 514 U.S. 419, 438 (1995)).
[9] *United States v. Bagley*, 473 U.S. 667, 675 n. 6 (finding, with respect to ensuring the defendant can have a fair trial, that the prosecutor's role "transcends that of an adversary").
[10] *Kyles v. Whitley*, 514 U.S. 419, 437, 115 S. Ct. 1555, 1567 (1995) citing *United States v. Bagley*, 473 U.S. 667 (a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.)
[11] *Id.*
[12] *Love v. Johnson*, 57 F.3d 1305, 1313 (4th Cir. 1995), *Pennsylvania v. Ritchie*, 480 U.S. 39, 58 L. Ed. 2d 40, 107 S. Ct. 989 (1987).

Based on the content and format of the disclosures produced thus far and the pattern of deception and withholding of evidence demonstrated by officers, Mr. David has reason to believe that additional communications exist beyond those that have been disclosed and that some communications have been deleted by officers. In addition to the group text messages, it is likely that officers communicated with one another individually, at least partially on personal cell phones.

The only way to enforce this Court's order and Rule 16 to ensure that Mr. David receives all discoverable communications is for the personal cell phones of the involved officers to be downloaded using technology and software that can reveal deleted messages. Self-produced screenshots are not sufficient in this case. Officers have gone to some lengths to obscure their communications, denied the existence of the conversations, and only turned over self-selected excerpts of the communications when confronted with irrefutable proof that the communications took place. Accordingly, Mr. David requests that this Court compel the government to require officers to produce their personal and work phones and any other devices for a forensic or forensic-style extraction using appropriate software and that all communications concerning the investigation of Mr. David be provided to Mr. David.

The government will likely express concerns that production of officers' personal cell phone communications is burdensome and violates officers' privacy. However, officers' decisions to use their personal devices to engage in discoverable communication make this a predictable result. Further, officers' decision not to disclose those communications as required by this Court's order until their deception was discovered by chance by defense counsel makes it impossible to trust that officers will now comply in full. Forensic extraction of officers' communications is no more onerous, burdensome, or embarrassing to officers than it is to the innumerable defendants and witnesses whose phones are "dumped" in the course of a criminal investigation. In fact, this

request is significantly less revealing than a typical phone extraction, as Mr. David seeks only discoverable communications from these devices and does not request officers' private search histories, camera rolls, or other such data.

For all these reasons, Mr. David respectfully moves this Court to compel the government's production of all discoverable communications as required by law and for any and all other relief the Court deems appropriate.

Respectfully submitted,
MICHAEL ANTONIO DAVID, JR.

By: ______/s/____________________
Counsel

Tessa L. Adkins, Esq.
Assistant Federal Public Defender
Virginia Bar No. 101517
Attorney for Mr. David
Office of the Federal Public Defender
210 First Street, SW, Suite 400
Roanoke, VA 24011
Telephone: (540) 777-0887
Fax: (540) 777-0890
Email: Tessa_Adkins@fd.org

**CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

/s/ Tessa L. Adkins
Tessa L. Adkins