**U. S. Department of Justice**

*United States Attorney*
*Western District of Virginia*

*Robert N. Tracci*
*First Assistant United States Attorney*

*Street Address (overnight mail)*
*310 First Street, SW, Room 906*
*Roanoke, Virginia 24011*

*Mailing Address*
*P. O. Box 1709*
*Roanoke, Virginia 24008-1709*
*Telephone: 540-857-2250*
*Fax: 540-857-2614*

May 27, 2026

Heidi Bohn
Assistant Federal Public Defender
Via email: Heidi_Bohn@fd.org

Re: May 7, 2026, Discovery Request

Dear Ms. Bohn:

In an effort to be concise and avoid confusion I've copied your discovery request into this letter and provided responses in bold below each request.

1. Any and all Roanoke Police Department and Gang Intel Unit (GIU) directives, policies and procedures governing the use of personal cell phones while on duty;

**OD 2.1.15 Telephone and Mobile Device Use has been attached to this letter.**

2. Any and all Roanoke Police Department and GIU directives, policies and procedures addressing the use of dispatch and preservation of dispatch records;

**Without locating a policy, it our understanding that radio communications usually are deleted within 184 days or approximately six months. This appears to be consistent with the laws of Virginia regarding records retention.**

3. Any and all Roanoke Police Department and GIU directives, policies and procedures addressing the use of duty cell phones and preservation of duty cell phone records;

**OD 2.1.15 Telephone and Mobile Device Use has been attached to this letter.**

4. Any and all Roanoke Police Department and GIU directives, policies and procedures addressing the use of communication apps while out in the field or engaged in operations;

**The case agent performed a keyword search in their policy database, and no policy was located.**

5. Any and all Roanoke Police Department and GIU directives, policies and procedures governing traffic enforcement / control;

**OD 62.1.1 Traffic Enforcement and OD 64.1.1 Traffic Direction and Control have been attached to this letter**

6. Any and all recordings of dispatch calls and radio runs for officers involved in the surveillance, traffic stop, K-9 request(s) and K-9 deployment on February 7, 2025 as it relates to the Nissan Sentra bearing license plate P44SHB, Jaquan Taylor, and Michael David, Jr.

**All discovery that currently exists as it relates to this request has already been provided. No radio communications currently exist for the Vice channel but may have existed at or near the time of the stop and have since been deleted in the normal course of data retention. It is our understanding that dispatch was not utilized via radio during this traffic stop therefore there are no recordings with officers on scene and dispatch.**

7. The body-worn camera footage provided in discovery shows both Sgt. Barber and J.F. Cobb making notes in separate notepads during the traffic stop. Please provide those notes.

**Neither of these handwritten notes still exist. The contents of those notes were incorporated into the reports which were already provided in discovery.**

8. In his report, J.F. Cobb wrote, "On 2/07/2025 I was contacted by Detective. Newman in regards to Vadar." Please have Cobb answer the following in relation to that report:

    (a) How did Detective. Newman contact you on 2/07/2025?
    (b) How many times did Detective Newman or other involved officers contact you on 2/07/2025?
    (c) At what time(s) did Detective Newman or other involved officers contact you on 2/07/2025?
    (d) What was the content of the communication(s) Newman and any other involved officers made to you on 2/07/2025?
    (e) What was the content of the communication(s) you made to Newman and any other involved officers on 2/07/2025?
    (f) Is the content of that communication preserved in writing, digital media, or recordings?

**Response: Ofc. Cobb has written a report and had his body worn camera activated during a portion of the traffic stop. Both have been provided in discovery.**

9. In his report, Robert Newman wrote, "As the stop was being initiated I called a K9 officer to the scene and K9 handler Cobb responded to the stop." Please have Newman answer the following in relation to that report:

(a) Did Detective Newman use his personal cell phone or work cell phone to call for a K9 officer on 2/07/2025?
(b) What was the content of the phone call(s) Detective. Newman made to have a K9 officer respond to the traffic stop on 2/07/2025?
(c) What was the content of the phone call(s) Detective. Newman had with J.F. Cobb on 2/07/2025?
(d) Is the content of that communication preserved in writing, digital media or recording?

**Response: Det. Newman authored a written report for this incident which has been provided in discovery.**

10. In his report, Detective N.J. Houch wrote, "Once the stop was made and David and Taylor were detained Detectives began to make arrangements to have a narcotics K9 head towards the stop based on David's narcotics and weapons law history." Please have Houch and any other officer with knowledge answer the following in relation to that report:

(a) What method(s) of communication did detectives use to make arrangements to have a narcotics K9 head towards the traffic stop on 2/07/2025?
(b) What was the content of all the communications made to make arrangements to have a narcotics K9 head towards the traffic stop on 2/07/2025?
(c) What was the content of all communications made between any officer or detective and any and all K9 officers on 2/07/2025?
(d) Is the content of that communication preserved in writing, digital media or recording?

**Det. Houch and the other officers present at the traffic stop have written reports and some were wearing body worn camera. These reports and camera footage have previously been provided in discovery.**

11. Which, if any, communication apps were used by officers involved in the surveillance, traffic stop, and K9 search involving Michael David, Jr. on 2/07/2025?

**Whattsapp was used by detectives.**

12. What was the content of any communications made on communication apps used by officers involved in the surveillance, traffic stop, and K9 search involving Michael David, Jr. on 2/07/2025?

**The content of this information is reflected in their written reports which have been provided in discovery.**

13. Did officers use their personal cell phones to communicate regarding the surveillance, traffic stop, and K9 search involving Michael David, Jr. on 2/07/2025?

    (a) If officers used their personal cell phones, which officers did so?
    (b) If officers used their personal cell phones, what cell phone carrier(s) did each officer have on 2/07/2025??
    (c) If officers used their personal cell phones, what were their cell phone numbers on 2/07/2025?

14. Did officers use their duty cell phones to communicate regarding the surveillance, traffic stop, and K9 search involving Michael David, Jr. on 2/07/2025?

    (a) If officers used their duty cell phones, which officers did so?
    (b) If officers used their duty cell phones, what cell phone carrier(s) did each officer have on 2/07/2025??
    (c) If officers used their duty cell phones, what were their duty cell phone numbers on 2/07/2025?

**Response for requests 13 and 14: Officers utilize cell phones routinely during the course of their duties. What phone they used, the carrier, and the phone number are not discoverable under Rule 16, the Jencks Act, or the Due Process Clause. The Government has disclosed the officer's written reports, body worn camera, and dash camera which contain the contents of officer communications on 2/7/25. The Government has also made efforts to locate any other written or recorded statements of the officers and has not located anything more than what has previously been provided in discovery.**

Very truly yours,

John Beamer
Special Assistant United States Attorney