**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

June 30, 2026

LAURA A. AUSTIN, CLERK
BY: **/s/ E. Jones**
DEPUTY CLERK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. 7:26-cr-00006** |
| | ) | |
| **MICHAEL ANTONIO DAVID, JR.** | ) | |

<u>**MEMORANDUM OPINION**</u>

At issue in this discovery motion are electronic communications among law enforcement officers involved in the investigation and arrest of Defendant Michael Antonio David, Jr., including text messages of the officers involved in the traffic stop and vehicle search of David. The motion seeks a forensic or forensic-style extraction of the personal and work phones of all officers involved in the surveillance, stop, and search underlying this prosecution, and all communications concerning David or the investigation of this case. Dkt. 66. I previously held a hearing on the discovery dispute and directed the Government to respond to the motion and to identify the steps necessary to conduct a forensic examination of the officers' devices. *See* Dkt. 69. The Government has now responded, Dkt. 72, and David has filed a reply, Dkt. 74. Defendant's motion is **GRANTED in part** and **DENIED in part**.

## I.    BACKGROUND

Law enforcement with the Roanoke City Police Department and the ATF Task Force conducted a traffic stop of David's vehicle[1] on February 7, 2025 following two hours of surveillance. Shortly after the stop, a K9 unit arrived on scene and alerted to the presence of narcotics in the vehicle. The ensuing search yielded two firearms in the center console. David

---

[1] The vehicle was a rental car listed under a different individual's name.

was charged initially with possession of a firearm as a convicted felon in violation of state law. A

federal grand jury has similarly charged him with a violation of 18 U.S.C. § 922(g)(1).

In his initial discovery requests dated March 23, 2026, David sought materials under

*Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972); and the

Jencks Act, 18 U.S.C. § 3500. *See* Dkt. 66-1. On May 7, 2026, David specifically requested

communications among officers involved in the surveillance, stop, and search. *See* Dkt. 66-2.

The Government represented that it had no such communications, but it produced officers'

written reports, body-worn camera footage, and dash-camera recordings. Dkt. 66 at 2–3; *see* Dkt.

66-3.

David persisted on his discovery request after body-worn camera footage showed officers

texting with one another during the traffic stop. The Government produced various screenshots

of messages that Task Force Officer Stephen Foster, who is also with the Roanoke City Police

Department and serves as the lead case agent, found through manual searches of officers'

personal and work phones. However, some officers had set their personal phones to

automatically delete text messages after one year, such that messages could not be recovered

from every phone. The Government made no effort beyond TFO Foster's manual search to

recover these lost messages or to ensure that it had otherwise captured potentially discoverable

electronic communications. David's motion to compel seeks a forensic examination of all

relevant devices to recover these communications, including deleted messages.

At a hearing held on June 4, 2026, TFO Foster testified that, approaching one year after

the search of David's vehicle and his arrest on state charges and knowing that the U.S.

Attorney's Office had adopted the case to charge David in this Court, he asked officers with

Roanoke City and ATF whether they had any messages related to David's case. When the

2

officers responded they did not, TFO Foster did nothing to confirm that no relevant information existed, did not ask the involved officers to check their devices (including personal phones), and did not attempt to search their devices. *See* Dkt. 73 at 41:2–42:3. Additionally, TFO Foster himself was a member of some group text messaging exchanges with other officers involved in the surveillance, stop, and search of David. But, he had forgotten about those messages, did not search his own phone, and, because he did not check his phone for relevant and potentially discoverable information, those messages were deleted through the automatic setting that removed all text messages after one year. *See id.* at 56:15–58:12.

Before the hearing on the motion to compel, TFO Foster approached several officers (but not all, as some of the involved officers were on leave or otherwise unavailable) and did a limited search of their phones which yielded some communications surrounding David's arrest. TFO Foster acknowledged that his ad hoc efforts to identify and obtain relevant communications from his own devices and those used by other officers did not satisfy the Government's discovery obligations. *See id.* at 68:25–69:18.

Since the hearing and being called to task for its wholly inadequate effort to identify and review potentially relevant and discoverable communications among officers related to the stop and arrest of David, the Government has continued its search efforts. Now, the Government has identified "hundreds" of additional electronic communications that were reviewed for relevance and possible production. Dkt. 72 at 3–4. According to the Government, TFO Foster manually searched officers' devices by narrowing to the date of the stop and by searching David's name and nickname, and this process captured all relevant messages. The Government asserts that because deleted messages were retained by other members of the group text exchanges, "there is no indication that any otherwise discoverable messages were deleted by *all* parties and so have

3

not been recovered and produced." *Id.* at 10. The Government acknowledges that its initial

collection efforts were inadequate, but it asserts that all discoverable materials have now been

produced and that a forensic extraction is unnecessary, burdensome, and intrusive.

David, in turn, asserts that the newly produced messages reveal investigative details

omitted from reports; communications relevant to the pending motion to suppress; bias against

David; and contradictions of officers' prior statements, including statements concerning David's

alleged gang affiliation. David contends that the Government's manual search is insufficient and

that only a forensic extraction can ensure completeness.

## II.    LEGAL STANDARD

The Government's discovery obligations arise under Rule 16 of the Federal Rules of

Criminal Procedure, *Brady*, *Giglio*, and the Jencks Act.[2]

### A.  Rule 16

Rule 16(a)(1)(E)(i) requires the government to produce items "material to preparing the

defense." The defendant bears the burden of showing materiality. *See United States v. Caro*, 597

F.3d 608, 621 (4th Cir. 2010). "[E]vidence is material as long as there is a strong indication that

it will play an important role in uncovering admissible evidence, aiding witness preparation,

corroborating testimony, or assisting impeachment or rebuttal." *Id.* (quoting *United States v.

Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)); *see also United States v. Marshall*, 132 F.3d 63, 67–

68 (D.C. Cir. 1998) (explaining that inculpatory evidence is not immune from disclosure), *as

amended* (Mar. 6, 1998). Rule 16 "thus provides for much broader discovery than that

---

[2] While *Brady* and *Giglio* evidence must be produced "in time for its effective use at trial,"
*United States v. Smith Grading & Paving, Inc.*, 760 F.2d 527, 532 (4th Cir. 1985); *see United
States v. Jeffers*, 570 F.3d 557, 573 (4th Cir. 2009), the Government does not need to produce
statements which fall under the Jencks Act until after the witness has testified, 18 U.S.C.
§ 3500(a).

constitutionally required under *Brady*." *United States v. Danielczyk*, No. 1:11CR85 JCC, 2013 WL 142460, at *4 (E.D. Va. Jan. 10, 2013). Still, there must be "some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor." *Caro*, 597 at 621 (citation omitted).

### B.  *Brady* and Its Progeny

Under *Brady*, the government has an affirmative obligation to produce evidence that is "both favorable to the accused and 'material either to guilt or to punishment.'" *United States v. Bagley*, 473 U.S. 667, 674 (1985) (quoting *Brady*, 373 U.S. at 87). Evidence is favorable "not only when it tends substantively to negate guilt but also when it tends to impeach the credibility of a key witness for the prosecution." *Love v. Johnson*, 57 F.3d 1305, 1313 (4th Cir. 1995) (citing *Giglio*, 405 U.S. at 154; *Jean v. Rice,* 945 F.2d 82, 87 (4th Cir. 1991)). Evidence is material if there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (citations omitted).

"*Brady* requests cannot be used as discovery devices." *Caro*, 597 F.3d at 619. "Indeed, *Brady* does not require that any materials be turned over on the chance that they might be exculpatory." *Danielczyk*, 2013 WL 142460, at *2 (citing *United States v. Agurs*, 427 U.S. 97, 109–10 (1976) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."), *holding modified by Bagley*, 473 U.S. 667).

If the defendant does not have access to potential *Brady* material, "he is not required . . . to make a particular showing of the exact information sought and how it is material and favorable." *Love*, 57 F.3d at 1313. Instead, he need only "'make some plausible showing'

5

that exculpatory material exists." *United States v. King*, 628 F.3d 693, 703 (4th Cir. 2011) (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 58 n.15 (1987)). In making the requisite "plausible showing" of the existence of exculpatory information, the defendant must "identify the requested [] material with some degree of specificity." *Id.* (quoting *United States v. Trevino*, 89 F.3d 187, 189 (4th Cir. 1996)).[3] "Specificity ensures that the government's *Brady* obligations do not become unduly burdensome, and that the defendant does not conscript the court for a groundless fishing expedition." *United States v. Abdallah*, 911 F.3d 201, 218 (4th Cir. 2018) (citation modified).

### III.    ANALYSIS

#### A.  Failure to Meet the Government's Discovery Obligations

As a threshold matter, the Government has an obligation to identify and preserve potentially relevant and discoverable documents and communications. Here, the Government fell woefully short of its duty to meet David's discovery requests and to secure relevant (and potentially exculpatory) evidence. Every federal prosecutor "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case." *Kyles*, 514 U.S. at 437. This duty is not satisfied merely by assuming that prosecution team members understand their obligations and will self-identify discoverable material. "[W]here a law enforcement officer 'suppresses' favorable evidence such that the prosecutor fails to learn of it, a violation of the *Brady* doctrine by the prosecutor results." *Lynn v. Tarney*, 405 F. App'x 753, 761 n.4 (4th Cir. 2010). Further, because disclosure is impossible without preservation, the Government must

---

[3] Although the "plausible showing" standard arose in the context of *in camera* review of confidential materials, its requirements are nonetheless instructive where a defendant seeks access to materials he cannot review or where the parties cannot agree on whether certain materials are subject to disclosure.

also take reasonable steps to preserve evidence it knows or should know exists. *See United States v. Foreman*, No. 2:10-CR-00026-H, 2011 WL 677270, at \*4 (E.D.N.C. Feb. 15, 2011) (citing *Chavis v. North Carolina,* 637 F.2d 213, 222–23 (4th Cir. 1980)).

The Government's preservation obligations apply equally to electronic communications, which must be properly identified and secured in case disclosure becomes necessary. *See United States v. James*, No. 2:25-CR-122, 2025 WL 3050060, at \*2 (E.D. Va. Oct. 31, 2025) (ordering a litigation hold "preventing the deletion or destruction of any records or communications having to do with the investigation or prosecution of this case"). Each member of the prosecution team must make potentially discoverable communications available to the prosecutor, who bears ultimate responsibility for reviewing and producing them. *See Barbee v. Warden*, 331 F.2d 842, 846 (4th Cir. 1964); *Johnson v. Baltimore Police Dep't*, 500 F. Supp. 3d 454, 462 (D. Md. 2020).

The Government failed to meet these obligations here. The officers involved in the surveillance, stop, and search of David and his vehicle used their personal devices with automatic deletion settings to conduct substantive case-related communications. Additionally, the Government failed to locate and preserve potentially discoverable messages in its possession and did not search in a manner likely to lead to finding all relevant and material information. The initial discovery productions did not include responsive communications which were plainly obvious from the body-worn camera footage, and the Government repeatedly represented that these communications no longer existed but that any information from these communications were in the written reports produced. These failings demonstrate, at best, a careless approach to discovery that cannot be accepted by courts. *See, e.g., United States v. Suarez*, No. CRIM.A. 09-932 JLL, 2010 WL 4226524, at \*6 (D.N.J. Oct. 21, 2010) (criticizing the government for failing to preserve text messages between agents and a cooperating witness during an ongoing

investigation). Indeed, the Government acknowledges that "the initial collection of discovery materials was inadequate" and that "the better practice in this case would have been for the law enforcement officers involved in the defendant's traffic stop to identify, collect, and produce discoverable text communications earlier and without the prodding of defense counsel." Dkt. 72 at 9.

Finally, the Government's efforts to recover messages since David filed his motion to compel are similarly insufficient. After the hearing, TFO Foster searched officers' personal and work phones only by filtering for the date of the stop and for David's name and nickname. He then took screenshots of messages he deemed relevant. This method necessarily excludes messages that do not fall within TFO Foster's chosen parameters and fails to capture metadata that could reveal whether messages were deleted or whether group chat membership changed over time. Further, there is no degree of certainty that deleted messages were "recovered" simply because they existed on the text thread of another person involved in David's stop and arrest.

Taken together, the Government's reliance on officers' recollections rather than systematic searches, combined with and its repeated failure to locate messages plainly visible on video footage, demonstrates that its efforts fell short of its obligations under Rule 16 and *Brady*. Little doubt exists that the Government would not permit such an ad hoc or haphazard response to a grand jury subpoena. The results thus far and the production of further information only upon prodding underscore the shortcomings of the Government's approach to discovery in this case and the need for a more reliable method to identify and preserve potentially discoverable electronic communications. A more thorough, thoughtful, and comprehensive search of the relevant phones is necessary.

### B. Scope of Discoverable Material

Rather than seeking to compel a particular document or predefined set of documents in the Government's possession, David seeks all communications "that mention [him] or any other matters relevant to the investigation of this case." Dkt. 74 at 4. While this request is simply too broad, David has identified specific evidence that could be plausibly favorable as to communications about the traffic stop and the events immediately surrounding it.[4]

### 1. Communications Concerning the Traffic Stop

Under the standards set forth in Rule 16 and *Brady*, David has shown that communications among law enforcement officers concerning the traffic stop plausibly contain relevant, discoverable material or exculpatory information.

*United States v. King* and *United States v. Abdallah* are particularly instructive. In *King*, the court found that the defendant made a plausible showing that a witness's grand jury testimony contained material information where the witness played a pivotal role at trial even though he never testified. 628 F.3d at 704. In *Abdallah*, the court found it was plausible that emails exchanged by law enforcement officers attending the defendant's interrogation "would reveal evidence that was materially favorable to Defendant's challenge of when *Miranda* warnings were given." 911 F.3d at 219. Similarly, the discovery David seeks bears directly on the factual and legal questions involving the traffic stop and search. The traffic stop led to the search of the vehicle and discovery of the firearms underlying the present charge, and David's motion to suppress turns on whether the stop and search were legal. At issue is whether the

---

[4] At the hearing, David moved to supplement his motion to compel by requesting production of communications between law enforcement officers involved in this case and the United States Probation Office. At this stage, I find that David has not shown that communications of this type are likely to contain material or exculpatory information and decline to order a forensic extraction or further compelled production of communications between law enforcement and the U.S. Probation Office.

officers unlawfully prolonged the stop, whether the K9 alert was reliable, and whether the officers were influenced by improper motives or coordination. Communications among officers involved about the stop and any investigative objectives could "play an important role" in preparing the defense, *Caro*, 597 F.3d at 621, or "reasonably be taken to put the whole case in such a different light," *Kyles*, 514 U.S. at 435.

David has identified specific examples of communications that are potentially discoverable, including messages involving the K9 officer and messages visible on the body-worn camera footage that the Government neither identified nor produced until prompted by David's motion to compel. These messages reveal investigative details about the stop and search omitted from the officers' reports. Additional communications not yet disclosed may contain similar information bearing on motive, bias, or inconsistencies central to the defense.[5] *See King*, 628 F.3d at 704 (finding that information about the witness's relationship with the defendant and the contraband, and thus his possible motive to ensure the defendant's arrest, "could have provided [the defendant] important ammunition for his defense").

Accordingly, David has made a plausible showing, with sufficient specificity, that communications about the stop and the events immediately surrounding it are material under Rule 16 and potentially exculpatory under *Brady*. While it is possible that these communications "contain nothing helpful to [David]," *King*, 628 F.3d at 703, they must at least be reviewed for discoverability.

### 2. All Other Communications

---

[5] According to the Government, "[t]here are a few minor, and generally irrelevant, inconsistencies among the texts, and texts critical of the defendant given his well-documented criminal history; but there is nothing that meaningfully undercuts their reliability as witness or shows significant bias against the defendant." Dkt. 72 at 7.

David also seeks communications that generally refer to him or his investigation. I find that David has not made a plausible showing as to such broad categories of evidence, which may encompass years of prior communications unrelated to the charged conduct.

Under Fourth Circuit precedent, a defendant must identify the requested material "with some degree of specificity" and make a plausible showing that it contains material and favorable information. *Trevino*, 89 F.3d at 189 (citation omitted). In *United States v. Houdersheldt*, the court found that the defendant's request for all electronic communications of all prosecution team members did not meet the required degree of specificity or plausibility. No. CR 3:19-00239, 2020 WL 7210993, at *2 (S.D.W. Va. Dec. 3, 2020). Likewise, David's broad discovery request for all communications pertaining to him cannot be justified under *Brady* or Rule 16. David has not identified examples of potentially discoverable messages that are unrelated to the stop, officers who sent or received messages outside of those involved in the stop or investigation, or specific time periods of relevant communications.

Nor has David explained how communications unrelated to the stop and search would be favorable to him. *See Caro*, 597 F.3d at 619 ("Because Caro can only speculate as to what the requested information might reveal, he cannot satisfy *Brady*'s requirement of showing that the requested evidence would be 'favorable to [the] accused.'" (citations omitted)). David argues that messages discussing him generally may reflect bias, but a defendant is not entitled to all statements reflecting potential bias, particularly where the statements are not tied to the investigation or the events giving rise to the charge. Moreover, "evidence that merely impeaches those who do not testify lacks relevance, much less materiality." *King*, 628 F.3d at 703–04 (citing *United States v. Sanchez*, 118 F.3d 192, 197 (4th Cir. 1997)). Producing all communications that mention David would be disproportionate and inconsistent with the

specificity and materiality requirements under *Brady* and Rule 16. *See, e.g.*, *United States v. Cousin*, No. CR 20-10071-ADB, 2022 WL 314853, at *25–26 (D. Mass. Feb. 2, 2022) (denying the defendant's request for all communications among law enforcement officers concerning the defendant).

Because David has not made a plausible showing that all communications referring to him, across all time periods and contexts, are likely to contain exculpatory or material information, these communications are not subject to disclosure.

### C.  Scope of Forensic Extraction

I find that a focused forensic extraction to recover potentially discoverable communications is justified and proportional in this case. *Cf. United States v. Akula*, No. 3:19-CR-30039-MGM, 2020 WL 1853632, at *3–4 (D. Mass. Apr. 13, 2020) (finding that the defendant was entitled to complete extraction of a victim's cell phone, including metadata); *United States v. Meintzschel*, 538 F. Supp. 3d 571, 584–89 (E.D.N.C. 2021) (ordering the government to produce a victim's iPad tablet for forensic analysis).

The Government estimates that a forensic extraction would take approximately ten working days, which I find to be workable and appropriate under the circumstances. The Government is directed to conduct a forensic extraction or download of the personal and work devices used by all law enforcement officers who communicated about the investigation, surveillance, stop, or search of David that resulted in his arrest on February 7, 2025, in accordance with the following:

1. The extraction is limited to the categories of communications for which David has made a plausible showing—namely, communications among officers involved in the stop about the stop and the events immediately surrounding it. Within seven days, the

12

parties shall meet and confer to propose a list of devices to be searched, date-range limitations, keyword limitations, and any reasonable technical parameters for the extraction. The parties shall file a joint submission within fourteen days identifying areas of agreement and any disputes.[6]

2.  The party conducting the extraction or download shall provide a sworn certification describing the devices searched, the extraction tools used, the search parameters applied, and whether deleted messages or metadata were recoverable.

3.  The Government shall review extracted materials for discoverability under Rule 16, *Brady*, *Giglio*, and the Jencks Act and produce discoverable materials to David within seven days of the completion of the forensic search of the devices. Any disputed materials shall be submitted to the Court for *in camera* review.

## IV.    CONCLUSION

For the foregoing reasons, David's motion to compel is **GRANTED in part** and **DENIED in part**. An appropriate Order accompanies this Memorandum Opinion.

Entered:  June 30, 2026

*Robert S. Ballou*

Robert S. Ballou
United States District Judge

---

[6] The examination will involve the personal phones officers used to text and message about the surveillance, stop, and arrest of David. All reasonable efforts should be used to conduct the search of personal phones to protect the private information of the officers involved.